# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                                                          **PLAINTIFF**

**v.**                                                    **Civil Action No. 3:16-CV-00769-HTW-LRA**

DANNY'S RESTAURANT, LLC AND
DANNY'S OF JACKSON, LLC F/K/A
BABY O'S RESTAURANT, INC. D/B/A
DANNY'S DOWNTOWN CABARET                                      **DEFENDANTS**

_____

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT
## AS TO SUCCESSOR LIABILITY

Before the court is the Motion for Partial Summary Judgment as to Successor Liability filed by the Plaintiff, United States Equal Opportunity Commission (hereafter "EEOC") **[doc. no. 79].** Defendant, Danny's of Jackson LLC (hereafter "Danny's of Jackson" or "Defendant") opposes the motion. The parties have completed their briefing on the motion and this court is prepared to rule.

This lawsuit is an enforcement action brought by the EEOC under the auspices of Title VII of the Civil Rights Act of 1964[1], as amended, and the Civil Rights Act of 1991, to correct allegedly unlawful employment practices of the Defendant based on race. The suit seeks relief on behalf of Ashley Williams and a class of Black female exotic dancers (hereafter referred to collectively as 'complainants') who worked at Danny's Downtown Cabaret and allegedly were subjected to disparate terms and conditions of employment based on their race.

_____

[1] 42 U.S.C. §2000e, et seq

Defendant insists that it is not liable for the alleged violations of Title VII, because, *inter alia,* the complainants did not work at its club during the time it (Danny's of Jackson) owned and operated the business. Defendant Danny's of Jackson claims that Baby O's Restaurant, Inc. (hereafter Baby O's"), operated the establishment in 2013, around the time period complained of in the EEOC charge, and that Danny's of Jackson only began operating the club after that period, upon purchasing the assets from Baby O's in April of 2016.

Plaintiff EEOC, disagreeing, brings this motion asking the court for partial summary judgment in its favor on that key question: whether Danny's of Jackson is the successor in interest and liability to Baby O's, the predecessor entity which operated the strip club prior to April 11, 2016. Plaintiff asserts that no genuine issue of fact exists regarding any of the predicates necessary for the imposition of successor liability. Additionally, Plaintiff contends that in a prior judicial proceeding, Danny's of Jackson actually conceded that it is the successor in interest to Baby O's for Title VII purposes and is, therefore, judicially estopped from contending otherwise.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Danny McGee Owens (hereafter "Owens") is presently the only member of Danny's of Jackson, LLC, Defendant herein. Owens, who was the owner of a similar club featuring adult entertainement in Memphis, Tennessee, brought that concept to the Jackson, Mississippi area, and opened "Danny's", a strip club located on Lakeland Drive. The club moved from Lakeland Drive to its current downtown Jackson location, according to the deposition testimony of Lesli Stovall, who identified herself as Owens' girlfriend during that time. "It was – the original one was Danny's on Lakeland Drive. And then there was a dispute with the city about, you know, the location and it being able to be an adult entertainment. And that's when we moved to the

downtown building where it is right now." *Stovall Dep.* [doc. no. 79-3 at p. 11].

As the result of a felony conviction for, in Owens' own words, "money laundering, for gambling, racketeering, I don't know, I guess." *Owens Dep.*23:5-7[doc. no. 79-1 at p.14], Owens was incarcerated from around 1992 until 2016. While he was in prison, the corporations that owned the strip club went through several name changes, but the strip club, itself, continued to operate in the same way, at the same location and under the same name, "Danny's Downtown Cabaret." The names of the corporations changed, the incorporators changed, and the officers changed; but all of these incorporators and officers had close personal ties with Owens. See *Owens Dep.* 73-74 [doc. no. 79-1 at pp. 43-44].

"Southwest Street and Rankin Street Restaurants of Jackson, Inc.," incorporated in 1998, is one of the many such companies that Owens and his family incorporated. James Cooper, Owens' stepfather, was listed as the incorporator and registered agent of Southwest Street and Rankin Street Restaurants of Jackson, Inc, *Articles of Incorporation,* [doc. no. 79-6] and Owens' former girlfriend, Lesli Stovall, was president. *Articles of Amendment,* [doc. no. 79-7]. As previously discussed, Owens, himself, was in prison during this time. Under the corporate ownership of Southwest Street and Rankin Street Restaurants of Jackson, Inc.," "Danny's Downtown Cabaret" continued to operate as a strip club in downtown Jackson, at 995 S. West Street, which is on the corner of S. West Street and Rankin Street.

In 2005, the corporation changed its legal name from "South West Street and Rankin Street Restaurants of Jackson, Inc." to "Baby O's Restaurant, Inc." hereafter ("Baby O's"). *Articles of Amendment* [doc. no. 79-8 at p.5]. The newly formed corporation, Baby O's, continued to operate the strip club at 995 S. West Street in Jackson, Mississippi, as "Danny's Downtown Cabaret," commonly referred to as "Danny's" or "Danny's Downtown."

Owens' former girlfriend, Lesli Stovall, testified in her deposition that Baby O's was formed to hold the club for Owens while he was in prison. *Stovall Dep*., pp.38-39 [doc. no. 79-3 at pp.12-13]. In her deposition, Stovall stated that she was named as president because she could be trusted to turn the company back over to Owens upon his release from prison. Based on the evidence provided, Stovall appears to have been only a straw owner. She did not pay any money or contribute any assets to the corporation *Stovall Dep.* 94:6-20 [doc. no. 79-3 p.34]; nor did she receive any compensation from the corporation. *Stovall Dep.* 121-22 [doc. no. 79-3 pp. 40-41].

Stovall also testified to not having any role in the corporate decision-making and her role at the club was that of a dancer. She stated the following in her deposition:

> A: .... But as far as like business of the club, I was just a dancer..... well I did manage one night a week because we were short a manager, so I did manage one night a week.... but I mean as far as anything else, I mean, the people that pretty much ran the day to day, I would say was his [Owens'] mother, Shirley Cooper, and Blake's [Owens' son's] mother....Pat Owens. I'm just saying they're the ones that did all the paperwork, all the banking, filed taxes.

*Stovall Dep.* [doc. no. 79-3 pp.18-19].

Baby O's owned and operated the strip club beginning in 2005, when the corporate name was changed to Baby O's. Owens' son, Danny "Dax" Owens, (hereafter "Dax"), acted as general manager during much of this time, including the period relevant to the complaints of discrimination that are the genesis of this lawsuit. Although Owens was incarcerated from about 1992 until 2016, several former managers and employees testified by deposition that Owens remained deeply involved in the operations of the club. Alison Wade and Brittany Rayner, former dancers at the club and complainants herein, both testified that while he was incarcerated, Owens was emailed nightly reports and that Owens called the "door girls" every night to inquire as to how many black people were in the club, how many dancers were there, etc. *B. Raynor Dep.* 62:25-63:1 [doc. no. 79-15 pp.18-19]. *Wade Dep. Exhibit N,* 24:11-24 [doc. no. 79-14 at

pp. 8-9].

In April of 2016, Lesli Stovall and Baby O's purportedly transferred the assets of Baby

O's Restaurant, Inc., to Danny's of Jackson, LLC and Danny M. Owens. *Bill of Sale and*

*Assignment and Assumption Agreement* [doc. no. 79-12]. Danny's of Jackson continues to

operate the strip club as "Danny's Downtown Cabaret", at the same West Street address in

downtown Jackson today.

EEOC alleges that Danny's of Jackson LLC, the current owner of Danny's is the

successor in interest to Baby O's Restaurant, Inc., the former owner of Danny's. As earlier

stated, these Defendants quarrel with this contention.

On August 2, 2013, Ashley Williams filed with the EEOC her accusatory charge alleging

discrimination. *Williams EEOC charge* Exhibit Q [doc. no. 79-17]. Dax acknowledges that he

informed his father of the charge of discrimination. *Dax Owens Affidavit, Exhibit R.* [doc. no.

81-11].

The EEOC issued a Letter of Determination[2] on June 2, 2016, finding reasonable cause

to believe that the Defendants had violated Title VII [doc. no. 81-13]. Efforts at conciliation

---

[2] Following the investigation of the charge made by an employee, the EEOC issues its "letter of determination", making a determination on the merits of the charge filed with the Commission alleging violations under Title VII of the Civil Rights Act of 1964, as amended. In the instant case, the EEOC found:

> Respondent treated Williams and a class of other black female entertainers in a discriminatory manner and subjected them to segregated working conditions. Specifically, Respondent assigned Charging Party and a class of black dancers to work at Black Diamonds. The assignment at Black Diamonds paid significantly less than comparative assignments at Danny's. Moreover, Charging Party and a class of blacks were subjected to harsher disciplinary action than similarly situated white entertainers in the form of excessive fines.
> Based on its investigation the Commission has concluded there is reasonable cause to believe discrimination occurred because Charging Party and a class of black female employees were subjected to disparate terms and conditions of employment by Respondent in violation of Title VII.

*EEOC Letter of Determination.* [doc. no. 81-13 at p. 3].

failed and on July 29, 2016, the EEOC issued to Defendants a Notice of Failure of Conciliation. On behalf of the complainants, the EEOC filed the instant lawsuit on September 30, 2016.

This suit initially was brought against Danny's Restaurant, LLC as well as against Danny's of Jackson, LLC. Danny's Restaurant, LLC did not file an answer nor enter an appearance in this cause, however, and the Clerk of Court entered default against it on August 24, 2017 [doc. no. 41].

EEOC alleges that Baby O's was formerly doing business as Danny's Downtown Cabaret and that Danny's of Jackson continues to own and operate Danny's Downtown Cabaret. Plaintiff seeks, *inter alia,* injunctive relief; back pay for Ashley Williams, the complainant terminated by the Defendants; compensation for past and future pecuniary and non-pecuniary losses; and other affirmative relief to make all of the complainants whole. Plaintiff also asks for punitive damages for what it alleges to be malicious and reckless conduct.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*; *Copeland v. Nunan,* 250 F.3d 743 (5th Cir. 2001); see also *Wyatt v. Hunt Plywood Company, Inc.,* 297 F.3d 405, 408–09 (2002). When assessing whether a dispute to any material fact exists, all of the evidence in the record must be considered, but the court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); instead, the court is to "draw all reasonable inferences in favor of the nonmoving party." *Id*.; *Wyatt*, 297 F.3d at 409. All evidence and the reasonable inferences to be drawn therefrom must

be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc*. 369 U.S. 654, 655 (1962).

A party, however, cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *TIG Ins. Co. v. Sedgwick James of Wash. 276 F.3d 754, 759 (5ᵗʰ Cir. 2002); S.E.C. v. Recile, 10 F.3d 1093, 1097 (5ᵗʰ Cir. 1997); Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

III.     **DISCUSSION**

A. THE LAW OF SUCCESSOR LIABILITY

The successorship doctrine derives from labor law principles. The policy protects employees in cases involving the purchase of assets by one corporate entity from another. The United States Supreme Court has held that the acquiring company will be obligated to negotiate under a preexisting collective bargaining agreement if "substantial continuity" in the business enterprise is proven before and after the change in ownership. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 551, 84 S.Ct. 909, 915 (1964). In finding "substantial continuity," the Supreme Court, in *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27 (1987), said that where the second company had acquired most of the seller's real property, machinery and equipment, as well as much of its inventory and materials, had introduced no new product line, and the employees' jobs did not change, that evidence was sufficient to prove "substantial continuity", such that the second company was successor to the first and thereby obligated to bargain with the union representing its predecessor's employees. *Id.* 482 U.S. at 40, 43–47, 107 S.Ct. at 2234, 2236–38. See generally, *Southward v. South Central Ready Mix Supply Corp.,* 7

F.3d 487, 493–96 (6th Cir. 1993).

The successor liability doctrine was first applied in the employment discrimination context by the Sixth Circuit Court of Appeals in *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc*., 503 F.2d 1086, 1093 (6th Cir. 1974). An employee of the Flintkote Company filed charges with the EEOC alleging race and sex discrimination. At some point after the EEOC had notified Flintkote that EEOC had reasonable cause to believe that Flintkote had engaged in unlawful employment practices, MacMillan Bloedel Containers, Inc., took over the operation of the Flintkote facility. The EEOC filed suit against MacMillan Bloedel Containers, Inc..

MacMillan Bloedel Containers, Inc., sought dismissal and/ or a grant of summary judgment, because it had not been named in the charges filed by the employee prior to institution of the suit by EEOC. The EEOC contended that despite not being charged, MacMillan Bloedel Containers, Inc., was liable as a successor employer to remedy the discriminatory practices of Flintkote. Citing *John Wiley & Sons, supra,* and International Brotherhood of Electrical Workders, Local Union NO. 5 v. EEOC, 398 F.2d 248 (3d Cir. 1968), cert. denied, 393 U.S. 1021, (1969), the court acknowledged that Title VII was fashioned to some degree after the Labor Act. The court continued, " [t]he emphasis that both Acts place on extending protection to and providing relief for the victims of prohibited practices is sufficient, in our view, to warrant imposing liability on a corporate successor for Title VII violations of the predecessor company". *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1091 (6th Cir. 1974). The considerations that justify use of the successor doctrine to remedy unfair labor practices apply equally to unfair employment practices under the Civil Rights Act of 1964.

The Fifth Circuit Court of Appeals, as well as most other Circuit Courts of Appeal, have since applied the successor liability doctrine to employment discrimination cases.[3]  *In Rojas v. TK Communications, Inc.,* the Fifth Circuit Court of Appeals stated the following:

> The successor doctrine arises in the context of discrimination cases in situations where the assets of a defendant employer are transferred to another entity. Thus, the purpose of the doctrine is to ensure that an employee's statutory rights are not "vitiated by the mere fact of a sudden change in the employer's business." The doctrine allows the aggrieved employee to enforce against the successor a claim he could have secured against the predecessor.

*Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996) (quoting *Brennan v. Nat'l Tel. Directory Corp.,* 881 F. Supp. 986, 992 (E.D. Pa. 1995)).

The *Rojas* Court utilized the following nine factors, which it said should be considered in assessing whether successor liability should be imposed in a Title VII case.

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Rojas v. TK Commc'ns, Inc., at 750 (citing Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 750 (7th Cir.1985); see also *MacMillan* at 1094).

The Rojas Court agreed with *Musikiwamba* that the first two factors are the most critical, *Id.,* and that the remaining seven all assist with analyzing the larger question of whether a

---

[3]  See e.g., *Forde v. Kee Lox Mfg. Co., Inc.*, 584 F.2d 4 (2d Cir. 1978); *Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396 (3d Cir. 1999); *Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir. 1996); *EEOC v. G-K-G, Inc.,* 39 F.3d 740 (7th Cir. 1994); *Dominguez v. Hotel, Motel, Restaurant & Miscell. Bartenders Union*, 674 F.2d 732 (8th Cir. 1982); *Bates v. Pacific Maritime Ass'n*, 744 F.2d 705 (9th Cir. 1984); *Trujillo v. Longhorn Mfg. Co., Inc.*, 694 F.2d 221 (10th Cir. 1982); *In re National Airlines, Inc.*, 700 F.2d 695 (11th Cir. 1983).

continuity of operations and work force of the successor and predecessor companies exists, consistent with the requirements of *Wiley* and its progeny. *Id.* at 751; *see also Bates v. Pacific Maritime Ass'n,* 744 F.2d 705, 709–10 (9th Cir.1984) (three factors governing successor liability determination are (1) continuity in operations and workforce, (2) notice of the claim, and (3) ability of predecessor employer to provide relief); *Preyer v. Gulf Tank & Fabricating Co.,* 826 F.Supp. 1389, 1395 (N.D.Fla.1993); *cf. Criswell v. Delta Air Lines, Inc.,* 868 F.2d 1093, 1095 (9th Cir.) (applying *Bates* factors in age discrimination case), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989).

## B.  APPLICATION OF THE *ROJAS* FACTORS

This court now will examine the instant case in light of the *Rojas f*actors in order to determine whether Danny's of Jackson is the successor in interest to Baby O's.and, thus, liable for its Title VII violations.

### 1.  Notice of the Charge

Dax Owens and Danny McGee Owens had notice of the EEOC charge filed by Williams prior to execution of the "Bill of Sale and  Assignment and Assumption Agreement" by which Danny's of Jackson  purportedly purchased the assets of Baby O's. In August of 2013, Danny McGee Owens was still incarcerated and his son Dax Owens, according to the deposition testimony, was running the day – to - day operations of the club. Dax stated in his affidavit that he notified his father of the charge.  Additionally, the EEOC conducted an onsite visit to Danny's Downtown Cabaret on May 7, 2015, during which the EEOC interviewed Dax; so he certainly had notice of the charge prior to the ostensible sale in 2016.

A former attorney who represented Baby O's during much of the EEOC investigation, Mike Farrell, states in his Declaration that Owens was significantly involved in the process of

hiring him. Dax, Farrell said, had to consult with his business partner before engaging him [Farrell]. Dax later identified his business partner as his father, Danny Owens who was serving time in prison. Only with Owens' approval did Dax sign the engagement agreement. Later when presented with the legal bill, Dax telephoned his father, who put a cap on the amount they would pay. *Farrell Decl.* Exhibit T [doc. no. 79-20 ¶¶ 5-12]. Farrell's representation of Baby O's and the Owenses ended on March 28, 2016, prior to the sale of assets to Danny's of Jackson, so Dax Owens and Danny Owens had notice of the EEOC charge against Baby O's restaurant, Inc. and Danny's Downtown Cabaret prior to the sale.

Plaintiff also contends that Danny's of Jackson had imputed notice of the Williams charge. Notice is imputed to an acquiring company where upper level management of a corporation is involved in an unlawful employment practice and is then retained by the successor. *Golden State Bottling Co. v. N.L.R.B.*, *Id.,* 414 U.S. 168, 173 (1973). Not only did Dax continue to work for Danny's of Jackson as manager after the asset purchase, he was one of the two original members of Danny's of Jackson, LLC and served as the company's registered agent. *Certificate of Formation*, Exhibit X [doc. no. 79-24].

This court is persuaded that the Defendant here, Danny's of Jackson, LLC had notice of the EEOC charge before it purchased or transferred the assets of Baby O's. This first factor weighs in favor of successor liability.

2.  Ability of the Predecessor Company to Provide Adequate Relief

In *Rojas*, supra, the Fifth Circuit Court of Appeals did not find that the doctrine of successor liability should be imposed in that case, based on this second factor. In that case the Court found that the predecessor company, TK Communications, was able to provide relief, because it was still in operation and remained an income generating business. The *Rojas* court said,

"[t]he policy underlying the successor doctrine – to protect an employee when the ownership of his employer suddenly changes – is not served by imposing liability on Tichenor [the new company] in this case. Although Tichenor had notice of Rojas' claim and continued to operate KXTN in much the same way as TK [the prior company], TK is still a viable entity. Tichenor submitted uncontroverted evidence on summary judgment that, although TK has sold the assets of KXTN, it still operates five other radio stations..."

*Rojas,* at 750.

Unlike the case *sub judice,* the predecessor entity in *Rojas* was still in a position to provide a remedy to the complaining employees. Baby O's Restaurant, Inc., the alleged predecessor here, is no longer a viable entity after transfer of the assets to Danny's of Jackson. Baby O's does not have any assets, is not operating any business, is not generating any income, and has no ability to satisfy a judgment. Baby O's is not in a position to provide the remedy the complainants seek. Since Baby O's is no longer in operation, injunctive relief would also have no effect. This second factor then weighs in favor of successor liability.

3. Substantial Continuity of Business Operations

A review of the third criterion under *Rojas* requires this court to examine all of the last seven factors of the *Rojas* test to determine whether a substantial continuity existed in the operations of the business before and after the sale. As the Court stated in *Rojas*, and in *MacMillan Bloedel,* 503 F.2d at 1094, the absence or presence of any one factor is not determinative. The substantial continuity prong is satisfied where "no major changes are made in the operation of the business. *E.E.O.C. v. G-K-G, Inc.,* 39 F.3d 750, 748 (7th Cir. 1994).

This court considers the following factors:

 (a)  whether the new employer uses the same plant

Danny's Downtown is a strip club which was and is operated at the same location on S. West Street in Jackson, Mississippi, since at least 2011. At the time of the alleged discrimination

against the complainants in 2013, it was owned and operated by Baby O's. After April of 2016,

Danny's Downtown was operated by Danny's of Jackson, LLC, but remained in that same

location.

(b) whether the new employer uses the same or substantially the same work force

The evidence shows that Danny's of Jackson LLC retained essentially the same work

force after the transfer of assets from Baby O's in April 2016. As discussed previously, Dax

stayed on as manager after the transition. Linda Hilty, who did payroll and paid expenses for

Baby O's did the same job for the successor and also testified that she did not see a major change

in the payroll, that no mass firing occurred. *L. Hilty Dep.* Exhibit E. 120:11-24. [doc. no. 79-5 at

p.p. 15-16]. Adrea Samuel worked as a nude dancer at Danny's Downtown from late 2011 or

early 2012 until after the asset purchase and said that the ownership change did not cause any

major difference in the work force before or after the sale. *Samuel Decl*. Exhibit J. pp.1-2 [doc.

no. 79-10 at pp.2-3].

The jurisprudence in this area does not require that the successor workforce be identical

to the predecessor work force, or even that the majority of the workforce remain. *Prince v. Kids

Ark Learning Center, LLC*, 662 F.3d 992, 995 (8th Cir. 2010); see also E.E.O.C. v. G-K-G, Inc.,

39 F.3d 740, 748 (7th Cir. 1994). See *Bates v. Pacific Maritime Ass'n*, 744 F.2d 705 (9th Cir.

1984) (continuity of "work force" found where the successor company used "many of the same

personnel.") This court finds here substantial continuity of the work force.

(c) whether the new employer uses the same or substantially the same supervisory
     personnel

Dax, as previously discussed, was the manager before the asset purchase and continued in

that capacity after the asset purchase. Several other managers, according to deposition testimony,

also worked as managers before and after the April 2016 transaction.  They include Alison

Wade, Richard "Ricky" Merritt, Eric Varonanava and Niki Allen. *Wade Dep.* 114-115; 65- 66 [doc. no. 79-14 pp. 35-36, 21-22]. The supervisory personnel under the new employer were substantially the same.

(d) whether the same jobs exist under substantially the same working conditions

This next factor involves evaluating whether changes in the essential nature of the employees' jobs occurred. See *Fall River Dyeing & Fishing Corp. v. NLRB*, 482 U.S. 27, 44 (1987). According to the proof presented, the same categories of employees existed under the ownership of Baby O's as existed under ownership of Danny's of Jackson. This is to be expected since both owners operated the exact same type of business, if not the same business. Before the asset purchase, Danny's Downtown employed the following: nude dancers, waitresses, door girls, bartenders, managers, deejays and security. *M. Raynor Dep.* 63:16-64:22. [doc. no. 79-16 at pp. 7-8]. After the asset purchase, Danny's Downtown employed the following: nude dancers, waitresses, door girls, bartenders, managers, deejays and security. The manner in which these persons performed their jobs did not change. Samuel Decl.¶¶ 6-7 [doc. no. 79-10 at ¶¶ 6-7].

(e) whether the new employer uses the same machinery, equipment, and methods of production

The "Bill of Sale and Assignment and Assumption Agreement" executed between Baby O's and Danny's of Jackson provides for the purchase by Danny's of Jackson of "all of the assets of the Seller used or useful in the operation of the Business." [doc. no. 79-22 at p. 4] This included promotional and advertising materials, computers, websites, software, fixtures and furniture, phone system, intellectual property, goodwill, telephone number, social media accounts, and inventory. According to Owens, Danny's of Jackson did take over and use these assets. 30(b)(6) Deposition 17:17-18:22 [doc. no. 79-25 at pp. 10-11]. The "new" owners,

14

Danny's of Jackson LLC made no renovations following the asset purchase. Danny's of Jackson even used the same furniture. Clearly, Danny's of Jackson "uses the same machinery, equipment, and methods of production" as delineated in *Rojas* and *MacMillan Bloedel*.

 (f) whether the new employer produces the same product

Baby O's and Danny's of Jackson produced the exact same product, adult nude or semi nude entertainment at Danny's Downtown Cabaret, a strip club located on S. West Street in Jackson, Mississippi.

4.  This Court Finds Substantial Continuity of Business Operations

This court is persuaded that Danny's of Jackson, LLC is the successor in interest to Baby O's such that liability should be imposed upon it for any Title VII violations that occurred during the period of ownership of Baby O's, based on the successor liability doctrine. Although it is not necessary to find that all nine of the *Rojas* factors exist, in this instance this court does so find. Danny's of Jackson had actual and imputed notice of the charge, the predecessor company cannot provide an adequate remedy, and there was a substantial continuity of business operations between the old corporation and the new corporation.

## C.  JUDICIAL ESTOPPEL

Plaintiff EEOC asserts that Danny's of Jackson is estopped from claiming it is not the successor in interest to Baby O's in this suit, since the Defendant took a clearly inconsistent position in a prior court proceeding in 2017. Therefore, says EEOC, it is also entitled to summary judgment on the issue of successor liability on judicial estoppel grounds.

Judicial estoppel "is a common-law doctrine that prevents a party from assuming inconsistent positions in litigation." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988). The purpose of the doctrine is to protect the integrity of the judicial process and the

judicial system, not the litigant. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). *In re Superior Crewboats, Inc*., 374 F.3d 330, 334 (5th Cir. 2004). (Because the doctrine protects the judicial system, not the litigant, detrimental reliance does not have to be shown).

In order for judicial estoppel to apply, two criteria must be met. First, the party's position must be clearly inconsistent with its previous position. Secondly, the previous court must have accepted the party's earlier position. *Landry v. Green Tree Fin. Corp. of Alabama*, 2010 WL 1445530, at *4 (S.D. Miss. Apr. 8, 2010) (citing *Hopkins v. Cornerstone America,* 545 F.3d 338, 347 (5th Cir. 2008)). This court first examines Defendant's position regarding successor liability taken in the prior litigation to see if such was contrary to its position in this present lawsuit.

### 1.  Prior Inconsistent Position

In 2012, the EEOC filed suit against Baby O's for discriminatory practices against its Black entertainers, such as: subjecting Black entertainers to mandatory scheduling; assessing arbitrary fees and fines; limiting Black dancers to less lucrative shifts; and excluding them from advertising and promotions.  Baby O's was also accused of retaliation and constructive discharge. These practices, asserted the complainants in that case, caused them to work under adverse and disparate terms and conditions of employment, conditions to which their White counterparts were not subjected.  Though it denied any wrongdoing, in June of 2013, Baby O's entered into a consent decree whereby it agreed, among other things, to pay damages to the complainants, to implement certain changes, to make periodic reports to EEOC, and to conduct an Equal Employment Opportunity training program.

In December 2015, the EEOC filed a motion for contempt against Baby O's for failure to comply with the terms of the decree.  The contempt motion was resolved by entry of an Amended Consent Decree on January 26, 2016.  The EEOC again filed for contempt sanctions

against Baby O's on September 28, 2016.  This time, counsel for Baby O's informed the court that Baby O's Restaurant, Inc,. had been administratively dissolved by the Mississippi Secretary of State as of December 7, 2012, and that the business had been taken over by Danny's of Jackson, LLC on or about February 24, 2016.  *EEOC v. Baby O's Restaurant, Inc.*, Civil Case no. 3:12-cv-681 [doc. no. 32].  A Second Amended Consent Decree was entered in that case on March 2, 2017, and signed by Danny M. Owens as president of Danny's of Jackson, LLC. The decree was binding upon the Club, its officers, agents, management (including supervisory employees), successors, and assigns.  *EEOC v. Baby O's Restaurant, Inc.*, Civil Case no. 3:12-cv-681 [doc. no. 42].

This court is persuaded that by entering into the Amended Consent Decree, Danny's of Jackson acknowledged that it is the successor in interest to Baby O's. The lawsuit was styled as against Baby O's Restaurant, Inc., the only defendant in that case.  The consent decree [Civ. No. 3:12-cv-681 doc. no. 9] and the Amended Consent Decree [Civ. No. 3:12-cv-681 doc. no. 24] were entered into and signed by Baby O's.

The last motion for contempt filed by EEOC in that case [Civ. No. 3:12-cv-681 doc. no. 28], successfully sought to hold Danny's of Jackson, LLC in civil contempt for noncompliance with the terms of the Consent Decree entered into by Baby O's.  EEOC's motion stated at paragraph 6: "Defendant Danny's Restaurant LLC and Danny's of Jackson, LLC are the successors and assigns to Baby O's Restaurant, Inc.," [Civ. No. 3:12-cv-681 doc. no. 28 at p. 2]. In its answer to the motion for contempt [Civ. No. 3:12-cv-681 doc. no. 35], Danny's of Jackson claimed to be a separate entity from Baby O's and claimed not to have knowledge of the violations or the agreement made by Baby O's.  Nevertheless, Danny's of Jackson entered into a consent decree resolving the contempt motion against Baby O's, thereby acknowledging its role

as successor to Baby O's.

Danny's of Jackson has taken a different position in the instant litigation -- that it is not the successor in interest to Baby O's — thus meeting the first requirement for judicial estoppel to apply.

2.   Acceptance by The Court of The Prior Position

The second requirement for the doctrine of judicial estoppel to apply is that the court, in the previous proceeding, accepted the prior position.   EEOC contends that the Defendant asserted the position that it was the successor to Baby O's before a court by the signing of the consent decree, and the court accepted the position by accepting the consent decree.  The EEOC cites *Ward v. AMS Servicing, LLC,* 606 F. Appx. 506, 508 (11th Cir. 2015) and *New Hampshire v. Maine,* 532 U.S. 742, 749–50 (2001), for the proposition that a prior inconsistent position can be taken by signing a consent decree and accepted by the court.

In *Ward,* the bankruptcy petitioner agreed that her mortgage payments consisted of $1,319.50 monthly.  In a subsequent suit, she claimed her monthly mortgage payment was supposed to be only $1,182.89.  The petitioner claimed that judicial estoppel should not apply to her second suit because: (1) her prior statement was contained in a consent decree and not made under oath; and (2) she did not succeed in her litigation in bankruptcy court.   The Eleventh Circuit Court of Appeals held, in that case, that a statement does not necessarily have to be under oath for judicial estoppel to apply. *Id., at* 510, and that by presenting a detailed consent order to the bankruptcy court, the petitioner succeeded in her prior bankruptcy proceeding. *Id., at* 510. The court there concluded that judicial estoppel applied to bar the second suit, and upheld the district court's dismissal of same.

The United States Supreme Court, in  *New Hampshire v. Maine,* 532 U.S. 742, 749–50

(2001), held that New Hampshire was barred by judicial estoppel from claiming that its

boundary line with Maine ran along the Maine shore of the Piscataqua River, when in earlier

litigation, New Hampshire had agreed that the boundary line with Maine was in the middle of the

Piscataqua River, as evidenced by a consent decree.  In analyzing the second prong of the

judicial estoppel test -- acceptance by the court of the party's prior position -- the United States

Supreme Court stated the following:

> [T]he consent decree was sufficiently favorable to New Hampshire to garner its
> approval. Although New Hampshire now suggests that it "compromised in Maine's
> favor" on the definition of "Middle of the River" in the 1970's litigation, ...  that
> "compromise" enabled New Hampshire to settle the case [citation omitted], on
> terms *beneficial to both* States. Notably, in their joint motion for entry of the
> consent decree, New Hampshire and Maine represented to this Court that the
> proposed judgment was *"in the best interest of each State*.".... Relying on that
> representation, the Court accepted the boundary proposed by the two States.

*New Hampshire v. Maine,* 532 U.S. 742, 752 (2001) (citing *New Hampshire v. Maine,* 434 U.S.

1 (1977)).

Similarly, the consent decree entered into by Danny's of Jackson in the prior case was

sufficiently beneficial to it to entice it to settle.  In the Second Amended Consent Decree, the

parties stated they "have agreed that it is in their mutual interests to settle the matters asserted in

the EEOC's Motion for Civil Contempt Sanctions through the entry of this Second Amended

Consent Decree..."  The parties were able to settle the case on terms beneficial to both sides.

Danny's of Jackson  does not provide any legal authority to counter the EEOC's

argument on equitable estoppel.  Its factual argument is that Owens expressed during

negotiations that Danny's of Jackson was not the successor to Baby O's.  In its brief, Defendant

states as follows: "Throughout the negotiations that led to the resolution and in open court when

stating the agreement and setting forth the details, Danny McGee Owens, the sole member of

Danny's of Jackson, LLC, denied numerous times that it was a successor." *Memorandum*

*Response in Opposition to Motion For Summary Judgment on the Issue of Successor Liability*

[doc. no. 89 at p.1]. None of this is sufficient, however, to overcome the position taken in the

actual document that Owens signed and presented to the court for approval, a document in which

Owens agreed that Danny's of Jackson would be responsible for correcting the violations

allegedly committed by Baby O's. [doc. no. 42].

The Defendant also argues that the affidavit by Owens stating he did not own or operate

the club between June 2009 and January 2016. [doc. no. 88-1] is sufficient evidence to create a

material issue of fact. The affidavit is devoid of specific facts sufficient to refute the EEOC's

factual averments. No material issue of fact remains regarding the issue of judicial estoppel.

For all of the reasons discussed, this court concludes that the doctrine of judicial estoppel

applies *sub judice* to prevent the Defendant Danny's of Jackson from claiming, in this litigation,

that it is not the successor in interest and liability to Baby O's.

## IV.    CONCLUSION

No material issue of fact remains to be decided by the trier of fact regarding whether

Danny's of Jackson, LLC is the successor in liability to Baby O's Restaurant, Inc. This court has

viewed the evidence in the light most favorable to the non-movant, and for all the reasons stated,

concludes that Danny's of Jackson, LLC is the successor in liability to Baby O's Restaurant, Inc.

The motion for partial summary judgment filed by the United States Equal Employment

Commission **[doc. no. 79]** on this issue, thus, is **granted.**

SO ORDERED, this, the 25th day of September, 2018.

_s /HENRY T. WINGATE_____
UNITED STATES DISTRICT JUDGE